UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

Plastech Engineered Products, Inc., et al.[1]          Case No. 08-42417
                                                        Chapter 11
                    Debtors.                            Hon. Phillip J. Shefferly

                                                        Jointly Administered

_____/

## OPINION DETERMINING THAT SECTION 502(d)
## DOES NOT APPLY TO ADMINISTRATIVE EXPENSES
## UNDER SECTION 503(b)(9)

### I.  Introduction

This opinion addresses a single legal issue – whether § 502(d) of the Bankruptcy Code may

be used to disallow an administrative expense under § 503(b)(9).  For the reasons set forth in this

opinion, the Court holds that § 502(d) may not be used to disallow a § 503(b)(9) administrative

expense.

### II.  Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).  This is a core

proceeding under 28 U.S.C. § 157(b)(2)(B) and (O).

### III.  Facts

On February 1, 2008, Plastech Engineered Products, Inc. and a number of related entities

filed for relief under chapter 11 of the Bankruptcy Code.  (Plastech and its related entities are

_____

[1] The Debtors are the following entities: Plastech Engineered Products, Inc., LDM
Technologies, Inc., Plastech Frenchtown, Inc., Plastech Decorating Systems, Inc., Plastech
Exterior Systems, Inc., Plastech Romulus, Inc., MBS Polymet, Inc., LDM Holding Canada, Inc.
and LDM Holding Mexico, Inc.

collectively referred to as the "Debtor.") The Debtor was engaged in business as a tier one automotive supplier, designer and maker of blow-molded and injection-molded plastic products. At the time of filing, the Debtor had annual sales approximating $1.2 to $1.3 billion. The Debtor had 36 manufacturing facilities in North America, employed over 7,700 individuals, and had thousands of creditors. This is a large chapter 11 case. In June and July, 2008, the Court approved the sale of most of the Debtor's business operations. Since then, the Debtor has filed a disclosure statement and plan of liquidation and is in the process of liquidating its remaining assets, prosecuting adversary proceedings, resolving claims and otherwise working to wind up this chapter 11 case. An important issue still facing the Debtor is the handling of administrative expenses under new § 503(b)(9) that was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).

Shortly after filing this case, the Debtor filed a motion (docket entry #671) requesting an order establishing a bar date for filing requests for payment of § 503(b)(9) administrative expenses, and approving certain procedures for the allowance and payment of such requests. After holding a hearing, the Court granted the Debtor's motion and entered an order (docket entry #1083) that fixed May 30, 2008 as the bar date, and set forth the form, manner and procedures for filing and responding to these requests. Pursuant to this order (which was subsequently modified at the Debtor's request by order entered on August 1, 2008, docket entry #2368), the Debtor sent out a notice informing parties of the deadline and procedures for filing § 503(b)(9) administrative expenses.

A number of parties filed motions for allowance and payment of § 503(b)(9) administrative expenses. The Debtor has objected to the § 503(b)(9) motions of the following parties, based upon

the application of § 502(d): Vivatar, Inc., NB Coatings USA, Harman Becker Automotive Systems, Inc., Termax Corporation, Dow Chemical Company, Acord Holdings, LLC, KW Plastics, Recycling Division, and Michael A. Stevenson (collectively referred to as "§ 503(b)(9) Parties"). Before addressing any other issues raised by the motions filed by the § 503(b)(9) Parties, or by the Debtor's objections to the motions, including how § 502(d) might affect any particular § 503(b)(9) administrative expense, the Debtor and the § 503(b)(9) Parties requested that the Court resolve the threshold legal issue of whether § 502(d) even applies to § 503(b)(9) administrative expenses. After consultation with the Debtor and the § 503(b)(9) Parties on the record in open court, the Court fixed a procedure and set a briefing schedule for this issue, holding in reserve all other issues raised by the § 503(b)(9) Parties and the Debtor's objections to their motions. On August 21, 2008, the Court heard oral argument. This opinion addresses only this threshold matter, and is issued without prejudice to any of the other issues raised by the § 503(b)(9) Parties in their motions or in the Debtor's objections to those motions.

## IV.  The Statutory Framework

> "In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning–or ambiguity–of certain words or phrases may only become evident when placed in context. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole."

Greenbaum v. E.P.A., 370 F.3d 527, 535-36 (6th Cir. 2004) (quoting F.D.A. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132-33 (2000)).

A. <u>What is a § 503(b)(9) administrative expense</u>?

The starting point to resolve the legal issue before the Court is § 503 of the Bankruptcy Code entitled "Allowance of administrative expenses." Section 503(a) provides that "[a]n entity may timely file a request for payment of an administrative expense . . . ." 11 U.S.C. § 503(a). "Administrative expense" is not defined in the Bankruptcy Code. Section 503(b) provides that, "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title . . . ." <u>Id.</u> § 503(b). Prior to BAPCPA, § 503(b) contained six separate subparagraphs, each describing a category of claims entitled to administrative expense priority under § 503(b). The six categories were expressly made non-exclusive.[2] BAPCPA added § 503(b)(9) as a new category of administrative expense.[3] It allows an administrative expense for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." <u>Id.</u> § 503(b)(9).

There are a number of remarkable features about this new provision. Prior to BAPCPA, there were only very limited circumstances where a pre-petition obligation of a debtor was treated by § 503 as an administrative expense. For example, § 503(b)(3)(A) granted administrative expense

---

[2] Because § 503(b) does not have an exclusive list of administrative expenses, courts have developed various tests to determine whether a particular claim not expressly identified in § 503(b) is entitled to administrative expense priority under § 503(b). The Sixth Circuit Court of Appeals in <u>Pension Benefit Guaranty Corp. v. Sunarhauserman, Inc.</u>, 126 F.3d 811 (6th Cir. 1997) developed a "benefit to the estate" test to determine whether a claim is an administrative expense under § 503(b). Under this test, a debt is "an 'actual, necessary' administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate." <u>Id.</u> at 816 (citations omitted).

[3] BAPCPA also created two other new administrative expenses in § 503(b)(7) and (8), neither of which is relevant here.

-4-

priority to the actual and necessary expenses incurred by a petitioning creditor filing an involuntary bankruptcy petition against a debtor. Similarly, "reasonable compensation for professional services rendered by an attorney or an accountant" to a petitioning creditor was also treated as an expense of administration of a bankruptcy case under § 503(b)(4), even though such compensation was incurred pre-petition. These types of administrative expenses only occur in a very small percentage of cases and typically represent a relatively small portion of a debtor's pre-petition obligations.

In contrast, § 503(b)(9) departs significantly from pre-BAPCPA law by greatly expanding the expenses of administration of a bankruptcy estate. Section 503(b)(9) grants administrative expense priority for the value of goods received by a debtor within 20 days *before* the commencement of the case where such goods have been sold to the debtor in the ordinary course of its business. The presence of this type of pre-petition debt is far more pervasive than the relatively rare types of pre-petition debts that were previously elevated to expenses of administration under § 503(b)(3) and (4). Further, unlike the narrow application of § 503(b)(3) and (4), § 503(b)(9) applies to all cases, voluntary or involuntary.

A number of consequences flow from the Congressional decision to convert large sums of pre-petition debt to administrative expense priority. The cash needs for a debtor trying to exit chapter 11 by confirming a plan of reorganization are now significantly greater than pre-BAPCPA. This is because of the plan confirmation requirement in § 1129(a)(9)(A) that all administrative expenses be paid in full on the effective date of a plan. A debtor may no longer confirm a plan that provides for payment over time or partial payment for the value of goods received in the debtor's ordinary course of business and received within 20 days before the petition date over the dissent of the holders of such debts. Instead, a debtor must pay those debts in full on the effective date of the

plan. In addition to creating a large and potentially insurmountable cash hurdle for a debtor to confirm a plan, § 503(b)(9) also results in significant differences in the treatment of pre-petition debts of creditors who otherwise appear to be similarly situated. Section 503(b)(9) administrative expense priority extends only to the value of *goods* received by a debtor in the ordinary course of its business within 20 days before the bankruptcy case. It does not extend to the value of *services* rendered to a debtor during this 20 day time frame. Nor does it extend to the value of goods that a debtor may have received in this time frame if such goods were not received in the *ordinary course* of a debtor's business. One of the bedrock policies of the Bankruptcy Code is to provide uniform and equal treatment to creditors that are similarly situated. Contrary to this policy, § 503(b)(9) results in disparate treatment to parties that have each extended pre-petition unsecured credit to a debtor, although they otherwise appear to be similarly situated.

There is little legislative history to § 503(b)(9), although it is worth noting that the section of BAPCPA that created § 503(b)(9) is § 1227, entitled "Reclamation." That section of BAPCPA amended § 546 of the Bankruptcy Code to provide certain relief to sellers of goods who failed to give the required notice for an effective reclamation. Other than the presence of new § 503(b)(9) in this same section of BAPCPA, there is no legislative history to provide any insight into this provision.

Since § 503(b)(9) became effective, there is a developing body of case law and commentary about some of the issues it raises. The reported decisions on § 503(b)(9) to date address how a request for payment under § 503(b)(9) must be made, when a § 503(b)(9) expense must be paid, whether a § 503(b)(9) administrative expense can be allowed if the debt is also secured, whether a § 503(b)(9) administrative expense continues to be a pre-petition debt for purposes of the setoff

-6-

provisions under § 553(a), and what constitutes goods for purposes of § 503(b)(9). Although not directly on point to the issue before the Court, those decisions are instructive in trying to gain an understanding of exactly what a § 503(b)(9) administrative expense is, and whether it is subject to the disallowance provision of § 502(d).

In In re Global Home Products, LLC, No. 06-10340(KG), 2006 WL 3791955 (Bankr. D. Del. Dec. 21, 2006), the holder of a § 503(b)(9) administrative expense filed a pre-confirmation motion for the allowance and immediate payment of its § 503(b)(9) claim. Id. at *2. The issue before the court was *when* must a § 503(b)(9) administrative expense be paid. Noting that § 503(b)(9) did not specify a date for payment of this new administrative expense, the court looked to case law that dealt generally with the timing for payment of administrative expenses under § 503(a). Following well settled case law, the court held that the timing for payment of an administrative expense is left to the discretion of the court. Id. at *3 (citations omitted). The Global Home Products court then considered three factors in determining how to properly exercise its discretion under § 503(a) with respect to a § 503(b)(9) administrative expense, just as it would have done when considering the timing for payment of any other § 503(b) administrative expense. Id. at *4. The factors examined by the court were (1) the prejudice to the debtor, (2) the hardship on the administrative expense holder, and (3) the potential detriment to other parties in the case. Id. (citation omitted). After considering these factors, the court denied the motion to the extent that it sought immediate payment of the § 503(b)(9) administrative expense. Id. at *4-5.

Shortly after the Global Home Products case was decided, the court in In re Bookbinders' Restaurant, Inc., No. 06-12302ELF, 2006 WL 3858020 (Bankr. E.D. Pa. Dec. 28, 2006), was also confronted with the question of *when* must a § 503(b)(9) administrative expense be paid. Much like

Global Home Products, the Bookbinders' court found that the pre-confirmation allowance of a § 503(b)(9) expense does not create an "unqualified right to immediate payment." Id. at *4. Instead, the court held that the timing of payment of a § 503(b)(9) expense is governed by the same principles that govern the timing of payment of other § 503(b) administrative expenses. In reaching its holding, the court discussed both the nature and the benefits of a § 503(b)(9) expense:

> Section 503(b)(9) effectively converted what previously was a pre-petition "claim" into an allowable administrative expense. This new status provides at least two benefits to [the] holder of an administrative expense allowed under § 503(b)(9). First, the allowed expense must be paid in full as a condition of confirmation of a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A) (requiring full payment of allowed administrative expenses on effective date of the plan as a condition of confirmation, unless the holder has agreed to different treatment). Previously, the same liability was treated as a prepetition claim that could be classified in a plan of reorganization, was subject to plan voting and was susceptible to being paid only partially in a plan confirmed over the creditor's dissent. *See* 11 U.S.C. § 1123(a)(1) (requiring that a plan designate classes of "claims"); *id.* § 1126(c) (defining "acceptance" of a plan by a class of claims). The second possible benefit to the creditor is that there is a potential for a more prompt payment of "the 20 day" liability. Since the liability is an administrative expense and not a prepetition claim, a chapter 11 debtor with adequate resources can pay the allowed administrative expense prior to confirmation.

Id. at *3 (footnotes omitted).

In re Brown & Cole Stores, LLC, 375 B.R. 873 (B.A.P. 9th Cir. 2007) dealt with two other issues regarding § 503(b)(9). The first issue was whether a pre-petition creditor whose claim was secured could also have an allowed § 503(b)(9) administrative expense. The court concluded that it could not. Id. at 877-78. The second issue was whether the provisions of § 553(a) permitting the setoff of mutual claims and debts of a debtor and a creditor that "arose before the commencement of the case" could be applied to a § 503(b)(9) administrative expense. The court held that § 553(a) does apply to § 503(b)(9) administrative expenses despite the new priority given to them by BAPCPA, reasoning as follows:

-8-

Unlike all of the other subsections of § 503, subsection (b)(9) applies to prepetition debt. Congress has simply moved those claims up higher on the priority ladder. All of the other subsections of § 503 create administrative priority for postpetition debt. This is a crucial difference when applying the setoff provisions of the Bankruptcy Code.

. . .

Thus the provisions of § 553(a), which provide for setoff of mutual debts which arise before bankruptcy, do not apply to most administrative priority claims but do apply to twenty-day sales claims, which by definition arise prepetition.

Id. at 878-79.

While the Brown & Cole court's statement that "all" of the other § 503(b) administrative expenses create priority for post-petition debt is not entirely accurate (see § 503(b)(3) and (4)), the salient point made by the court is that a § 503(b)(9) administrative expense is still by its nature a pre-petition debt. The debtor incurred the obligation before it filed its bankruptcy petition. Therefore, while § 503(b)(9) now entitles that debt to be allowed as an administrative expense, the Brown & Cole court held that it was still subject to the setoff provisions of § 553(a) that apply to pre-petition debt. To state it another way, although § 503(b)(9) may elevate a certain pre-petition debt to an administrative expense priority in a bankruptcy case, that elevation does not alter the fundamental fact that the expense itself arose pre-petition and, in that court's view, remained a pre-petition debt.

The developing case law is just beginning to scratch the surface of the issues that § 503(b)(9) raises. Many other potential issues will undoubtedly be addressed in the future. See Carl N. Kunz, III, Section 503(b)(9) Claims and Bar Dates: Creditors Must be Vigilant, Am. Bankr. Inst. J. at 20 (July-Aug. 2008); Judith Greenstone Miller & Jay L. Welford, 503(b)(9) Claimants - The New Constituent, a.k.a., "the 500 Pound Gorilla," at the Table, Mich. Bus. L.J. at 18 (Spring 2008); Ryan T. Rough, "Twenty-Day Claims:" The Anticipated and Unanticipated Consequences of Code § 503(b)(9), Am. Bankr. Inst. J. at 24 (Nov. 2006). One of the issues identified by the commentary

but not yet addressed in any reported decision is the precise issue in this case: whether § 502(d) applies to § 503(b)(9) administrative expense claims. Although there are a number of reported decisions that address the issue of whether § 502(d) generally applies to § 503(b) administrative expenses, none of those cases involve its potential application to a § 503(b)(9) administrative expense. What makes the § 503(b)(9) wrinkle to this issue more complicated is the hybrid nature of this new § 503(b) expense: it is a pre-petition obligation of the debtor that is now elevated to an expense of administration of a bankruptcy estate by § 503(b)(9). Because of this wrinkle, the question also arises whether § 502(d) should apply to § 503(b)(9) administrative expenses even if it does not otherwise apply to § 503(b) administrative expenses.

B. The disallowance provision of § 502(d)

Section 501 of the Bankruptcy Code, entitled "Filing of proofs of claims or interests," provides in subparagraph (a) that a "creditor" may file a "claim." "Claim" is defined in § 101(5) as a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). The definition of claim makes no distinction as to whether such right accrued pre- or post-bankruptcy.

"Creditor" is defined in § 101(10) as an

> (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

-10-

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim.

Id. § 101(10).  While the term "claim" broadly refers to a pre- or post-petition right to payment, the term "creditor" is limited by definition to an entity that holds either a pre-petition claim or one of only a few post-petition claims specifically identified in § 101(10)(B).  In other words, it does not include the holder of other types of post-petition claims that are not referenced in § 101(10)(B).  However, § 501(d) specifically describes certain types of post-petition claims and expressly provides that such claims may be filed under § 501(a), (b) or (c) "the same as if such claim were a claim against the debtor and had arisen before the date of the filing of the petition."  Id. § 501(d).  In sum, § 501 permits the filing of pre-petition claims, and the filing of specific post-petition claims as if they were pre-petition claims.

Section 502 is entitled "Allowance of claims or interests."  Section 502(a) provides that a claim is "deemed allowed" upon the filing of a proof of such claim under § 501 unless a party in interest objects.  Section 502(b) provides that if an objection to a claim filed under § 501 is made, the court "shall determine the amount of such claim" and "shall allow such claim" unless one of nine enumerated exceptions applies.  Thus, while § 501 governs the *filing* of pre-petition claims and certain specifically identified post petition claims, § 502 governs the *allowance* of claims filed under § 501.

In addition to the allowance provision of § 502(a), and the exceptions to allowance provided by § 502(b), § 502(d) requires the court to *disallow* claims under certain circumstances.  It reads as follows:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any

-11-

> claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

"Section 502(d) is designed to assure an equality of distribution of the assets of the bankruptcy estate . . . ." Campbell v. United States (In re Davis), 889 F.2d 658, 662 (5th Cir. 1989). Section 502(d) accomplishes this by restoring assets to the estate and delaying or even prohibiting any payment to a creditor that has not repaid an avoidable transfer or turned over property of the estate. See In re Chase & Sanborn Corp., 124 B.R. 368, 371 (Bankr. S.D. Fla. 1991) (finding that § 502(d) "is designed to foster the 'restoration' of assets to a debtor's estate . . . by precluding anyone who has received a voidable transfer from sharing in any distribution or burdening an estate with continuing litigation unless he first pays back any preference that he has received") (citations omitted).

## C. The relationship of § 502(d) to § 503

The Debtor argues that the disallowance provision of § 502(d) is not limited to claims filed under § 501 and otherwise allowed under § 502. Instead, the Debtor asserts that it applies equally to administrative expenses allowable under § 503. In support, the Debtor points out that § 502(d) requires the Court to "disallow *any claim* of *any entity*" in the circumstances described in that section. In the Debtor's view, that means that § 502(d) can be used to disallow any claim irrespective of whether the entity's claim arose pre-petition or post-petition, irrespective of whether a proof of claim is filed or the claim is listed on the debtor's schedules, and irrespective of whether the claim is subject to the allowance provision of § 502 or the allowance provision of § 503. The

-12-

Debtor then posits that when BAPCPA created § 503(b)(9), it merely identified a special class of pre-petition claims and permitted that special class to be paid as administrative expenses under § 503(b), but did not insulate such administrative expenses from application of the disallowance provision of § 502(d).

The § 503(b)(9) Parties, on the other hand, assert that the disallowance provision of § 502(d) applies only to those pre-petition and post-petition claims that are filed under § 501 and allowed under § 502, and that § 502(d) simply does not apply to any of those pre-petition or post-petition obligations that are specifically allowed as administrative expenses under § 503. According to the § 503(b)(9) Parties, the allowance and payment of administrative expenses under § 503 is entirely separate and distinct from the filing of claims under § 501 and the allowance of claims under § 502. Therefore, they argue, when Congress determined to create a new class of § 503(b)(9) administrative expenses, it removed those § 503(b)(9) administrative expenses from the reach of the claims allowance provision of § 502 and therefore from the claims disallowance mechanism of § 502(d), which previously would have applied to what would have been general, unsecured pre-petition claims. Now, they argue, the payment and allowance of § 503(b)(9) administrative expenses is solely within the entirely separate provisions of § 503(a) and (b). The § 503(b)(9) Parties assert that § 502(d) just does not apply to the payment and allowance of administrative expenses under § 503(b).

The issue of whether § 502(d) applies generally to § 503(b) administrative expenses is not a new one. There are cases that have held that § 502(d) does apply to § 503(b) administrative expenses and there are cases that have held to the contrary. As there are no controlling decisions in this circuit, it is worth reviewing the cases on each side of this split.

-13-

An early case holding that § 502(d) does apply to disallow administrative expenses under § 503(b) is <u>Tidwell v. Atlanta Gas Light Co.</u> (<u>In re Georgia Steel, Inc.</u>), 38 B.R. 829 (Bankr. M.D. Ga. 1984).  In that case, Atlanta Gas filed an application in the debtor's chapter 11 case for payment of an administrative expense for gas that it supplied to the debtor post-petition.  <u>Id.</u> at 831.  The debtor alleged that Atlanta Gas had received pre-petition preferential transfers recoverable under § 547 of the Bankruptcy Code.  Accordingly, the debtor argued that the administrative expense of Atlanta Gas must be disallowed under § 502(d) of the Bankruptcy Code until Atlanta Gas repaid to the debtor's estate all of the preferential transfers it had received.  The court explained the purpose of § 502(d) as follows: "Section 502 was not designed to punish, but to give creditors an option to keep their transfers (and hope for no action by the trustee) or to surrender their transfers and their advantages and share equally with the other creditors."  <u>Id.</u> at 839 (citation omitted).  The court found that the fact that Atlanta Gas was entitled to an administrative expense under § 503(b) "has no bearing."  <u>Id.</u> at 839.  Section 502(d) required the disallowance of that administrative expense until Atlanta Gas repaid its preferential transfers.  <u>Id.</u> at 840.

More recently, the court in <u>MicroAge, Inc. v. Viewsonic Corp.</u> (<u>In re MicroAge, Inc.</u>), 291 B.R. 503 (B.A.P. 9th Cir. 2002) considered whether § 502(d) applies to § 503(b) administrative expenses.  In that case, Viewsonic was granted "an allowed reclamation administrative priority claim" in the amount of $574,024.90.  <u>Id.</u> at 505.  The debtor's confirmed chapter 11 plan required the debtor to pay allowed administrative expenses within ten days after the effective date of the plan. <u>Id.</u> at 506.  The debtor did not pay Viewsonic's administrative expense.  Viewsonic filed a motion to compel the debtor to do so.  The debtor responded by filing an adversary complaint against Viewsonic seeking to recover over $2,000,000 of alleged preferential transfers.  Further, the debtor

-14-

argued that because of § 502(d), the debtor should not be required to pay Viewsonic's allowed administrative expense unless and until Viewsonic returned the full amount of any preferential transfers. The bankruptcy court refused to permit the debtor to rely on § 502(d) and instead held that § 502(d) does not apply to administrative expenses under § 503(b). Id. at 506-07.

On appeal, the Bankruptcy Appellate Panel for the Ninth Circuit rejected the bankruptcy court's analysis of § 502(d). It started by noting that the plain language of § 502(d) is not limited to disallowance of pre-petition claims. Id. at 508. "Section 502(d) by its terms applies to 'any claim' of an entity that received an avoidable transfer, and the definition of a 'claim' in § 101(5) is sufficiently broad to include requests for payment of expenses of administration." Id. Although the court recognized that Viewsonic's request for payment of its administrative expense was a "specialized type of claim," it was nonetheless a claim within § 101(5)(A) and therefore within the scope of the disallowance provision of § 502(d). Id. Because § 502(d) did not on its face provide an exception for § 503(b) administrative expenses, the court concluded that proper statutory construction of these sections compelled the conclusion that administrative expenses are not excluded from the application of § 502(d). Id.

The MicroAge court then turned to legislative history and noted that § 57g of the Bankruptcy Act, which is the precursor to § 502(d), had been applied by bankruptcy courts to administrative expenses and that "the adoption of § 502(d) was not intended as a departure from existing law." Id. at 508-09 (citations omitted). Finally, the court considered the policies behind § 502(d) and observed that they apply with equal force to those parties seeking to be paid administrative expenses as well as those parties seeking to be paid with respect to pre-petition claims. Id. at 511-12. Although the Microage court concluded that § 502(d) does apply to administrative expenses under

-15-

§ 503(b), the court ultimately affirmed the bankruptcy court because Viewsonic's administrative expense had already been allowed by a separate order of the court and therefore it was too late for the debtor to raise § 502(d).  <u>Id.</u> at 513-14.

The <u>MicroAge</u> analysis was subsequently applied in another case decided by the Ninth Circuit Bankruptcy Appellate Panel.  In <u>Movitz v. Baker</u> (<u>In re Triple Star Welding, Inc.</u>), 324 B.R. 778 (B.A.P. 9th Cir. 2005), <u>abrogated on other grounds by</u> <u>Dye v. Brown</u> (<u>In re AFI Holding, Inc.</u>), 530 F.3d 832, 851 (9th Cir. 2008), the administrative expenses at issue were the fees of the debtor's chapter 11 counsel.  <u>Id.</u> at 781.  The potentially avoidable preference was the undisclosed payment of the attorney's pre-petition legal bills.  <u>Id.</u> at 782-83.  The court held that § 502(d) applies so that if the debtor's attorney "actually did receive an avoidable preference then he would be ineligible to be paid anything from the estate unless and until he returns that preference."  <u>Id.</u> at 794 (citing <u>In re MicroAge</u>).

In contrast to <u>MicroAge</u> there are a number of bankruptcy court decisions that have held that the disallowance provision of § 502(d) does not apply to § 503(b) administrative expenses.  In <u>Camelot Music, Inc. v. MHW Advertising and Public Relations, Inc.</u> (<u>In re CM Holdings, Inc.</u>), 264 B.R. 141 (Bankr. D. Del. 2000), the debtor was a retailer of prerecorded music, selling audio and video tapes, compact discs and related products.  <u>Id.</u> at 144.  MHW was the debtor's advertising agency.  The court found that MHW provided post-petition advertising services to the debtor that benefitted the estate and therefore MHW was entitled to an administrative expense under § 503(b). <u>Id.</u> at 151-52.  But the debtor alleged that MHW had received preferential transfers recoverable under § 547 of the Bankruptcy Code.  The court agreed.  <u>Id.</u> at 153.  The debtor requested that the court disallow MHW's administrative expense under § 502(d) until the preferential transfers were

-16-

repaid. The court held that § 502(d) was inapplicable to MHW's administrative expense. Id. at 157.

The CM Holdings court reached this result by examining all of the provisions of § 502 and finding "several subsections that suggest that § 502(d) is not meant to affect administrative expense claims." Id. First, the court noted that § 502(b) not only provides for the allowance of pre-petition claims but also includes in it an express reference to certain types of post-petition claims identified in § 502(e)(2), (f), (g), (h) and (i). "The express reference to, and treatment of, these other types of postpetition claims within the purview of § 502(d) suggests by negative implication that the drafters did not intend that administrative expense claims be subject to the set off provision of § 502(d)." Id. at 158. The court went on to examine other provisions of the Bankruptcy Code including the definition of creditor in § 101(10) and the provisions of § 348(d) regarding conversion of a case, and concluded that those sections lend further support to the court's view that "administrative expense claims are entitled to distinct treatment separate and apart from pre-petition, or deemed pre-petition, creditor claims." Id. at 158.

> The explicit references to postpetition claims other than administrative expense claims, including those found among the exceptions in § 502(d), again demonstrate that administrative expense claims are accorded special and distinct treatment and are not within the purview of § 502(d).

Id. at 159. The court therefore held that the debtor could not use § 502(d) to disallow MHW's administrative expense.

In In re Lids Corp., 260 B.R. 680 (Bankr. D. Del. 2001), the debtor was a hat retailer. Michael Doukas Associates provided digital photography of the debtor's hats for placement on the debtor's website. Id. at 681. The court found "that Doukas was entitled to payment as an administrative expense . . . [b]ecause the Debtor continued to use the photographs post-petition and that use benefitted the estate." Id. at 682. However, the debtor objected to the allowance and

-17-

payment of that expense because of an alleged preferential transfer that Doukas had received. According to the debtor, "pursuant to section 502(d), it need not remit any payment to Doukas until Doukas repays the asserted preference." Id. at 682. The Lids Corp. court rejected the debtor's argument:

> [W]e agree with Judge Walsh's analysis in CM Holdings that administrative expense claims are accorded special treatment under the Bankruptcy Code and are not subject to section 502(d). In particular, we conclude that Judge Walsh's statutory analysis is correct. Congress' inclusion of five post-petition claims to which section 502(d) expressly applies (none of which are applicable here) demonstrates that section 502(d) does not apply to other post-petition claims. We also agree that extension of section 502(d) to administrative claims could have devastating effects on a debtor's ability to reorganize.

Id. at 683-84.

In Beasley Forest Products, Inc. v. Durango Georgia Paper Co. (In re Durango Georgia Paper Co.), 297 B.R. 326 (Bankr. S.D. Ga. 2003), the court first noted the absence of any consensus in the case law regarding whether disallowance under § 502(d) applies to § 503(b) administrative expenses. Id. at 327-28. That court began its analysis by looking at §§ 501 and 502, and explained how they "work together." Section 501 is entitled "Filing of proofs of claims or interest." It "provides for the timely *filing*" of claims and interests, "but does not provide for *allowance* of such claims and interests." Id. at 328 (emphasis in original). "Allowance or disallowance of those claims and interests is provided in § 502 (entitled '*[a]llowance* of claims or interests')." Id. The court explained that § 502(d) is a "disallowance provision," "overriding allowance that otherwise would be granted under subsections (a) or (b) . . . ." Id. at 329.

In contrast to §§ 501 and 502, the court explained that § 503 provides for *both* the filing and the allowance of requests for administrative expenses in one statutory section. The court recognized that "expenses" and "claims" are not mutually exclusive labels

-18-

throughout all Chapters and sections of the Bankruptcy Code, in that several provisions sweep "administrative expenses" within the "claims" label. These references simply reflect that the Bankruptcy Code's definition of "claim" broadly includes any right to payment. They do not, however, override the more meaningful and specific utilization of the two distinct terms–"expense" and "claim"–within the subchapter in which both sections 502 and 503 are located.

Id. at 330 (citations omitted).

The court held that § 502(d) applies only to those pre-petition claims that would otherwise have been allowed under § 502(a) and (b) and to those post-petition claims identified in § 502(e)(2) through § 502(i) that would otherwise have been allowed under § 502(a), (b) or (c) or disallowed under § 502(d). Id. at 330.

While the language of § 502 expressly applies to claims filed under § 501, § 502 contains no language connecting it with allowance or disallowance of § 503 administrative expenses. Likewise, § 503 contains no provision conditioning allowance of its administrative expense claims upon § 502(d). In fact, § 503 contains no reference to § 502 whatsoever except to specify that "claims allowed under § 502(f)" are *not* governed by § 503's mandatory allowance.

Id. at 330.

Finally, the <u>Durango Georgia Paper</u> court found it significant that both allowance under § 503 and disallowance under § 502(d) are provided in "*mandatory* language." Id. at 331. Section 503(b) provides that "there *shall* be allowed" administrative expenses, while § 502(d) provides that the court "*shall* disallow" claims within its description. The court explained that neither of these two mandatory sections contains a qualifying clause that permits one of these sections to override the other.

Absent a qualifying clause, one mandatory statutory provision should not be presumed to trump another mandatory provision. To subject requests filed under § 503, which also provides for their allowance, to disallowance under authority of § 502 discounts the plain meaning of both sections and unnecessarily requires resolution of a "conflict" between sections 502 and 503.

-19-

Id. at 331 (citations omitted).

There are two decisions from bankruptcy courts within the Sixth Circuit that address whether § 502(d) applies to § 503(b) administrative expenses. The court in <u>Phoenix Restaurant Group, Inc.</u> <u>v. Proficient Food Co.</u> (<u>In re Phoenix Restaurant Group, Inc.</u>), Nos. 301-12036, 303-0568A, 2004 WL 3113719 (Bankr. M.D. Tenn. Dec. 16, 2004) held that § 502(d) does not apply to administrative expenses under § 503(b).

> Section 503 concerns administrative expenses, which are distinct from claims filed under § 501, and indeed, need not be requested by a "creditor." Administrative expenses are pursued by filing "a request for payment" under § 503(a), not by filing a proof of claim under § 501. Procedure for the management of a request for administrative expense under the Federal Rules of Bankruptcy Procedure is separate and different than the management of proofs of claim. There is no provision in § 503 analogous to § 502(d) disallowing administrative expenses held by an entity that received an avoidable transfer. Section 502(d) does not cross-reference or obviously affect the allowance or payment of administrative expenses under § 503.

Id. at *20 (comparing Fed. R. Bankr. P. 3001-3008 ("dealing with filing and allowance of claims under § 501") and Fed. R. Bankr. P. 1019(6) (dealing with the "timely filing of a 'request' for payment of an administrative expense after conversion")).

In <u>Roberds, Inc. v. Broyhill Furniture</u> (<u>In re Roberds, Inc.</u>), 315 B.R. 443 (Bankr. S.D. Ohio 2004), the court noted the split in the case law on this issue. Id. at 476 (collecting cases). The court followed the line of cases concluding that § 502(d) does not apply to disallow administrative expenses under § 503(b). Id.

Finally, in <u>In re USA Labs, Inc.</u>, No. 04-41587, 2006 Bankr. LEXIS 2394 (Bankr. S.D. Fla. Apr. 13, 2006), a former employee of the debtor filed an application for payment of $16,254.17 in post-petition wages. Id. at *2. The employee was allegedly the recipient of over $67,500 in preferential transfers. The trustee had a pending adversary proceeding against the employee, which

-20-

included a count for disallowance of the claim under § 502(d). The court "strongly agree[d]" with the line of cases holding that "§ 502(d) does not apply to administrative expense claims allowable under section 503 of the Bankruptcy Code." Id. at *3. The court's conclusion was primarily based on the "compelling" statutory analysis of those cases, including <u>Durango Georgia Paper</u>, <u>Lids Corp.</u> and <u>CM Holdings</u>. Id.

<blockquote>
D. Even if § 502(d) does not apply generally to § 503(b) <u>administrative expenses, does it apply to § 503(b)(9)'s?</u>
</blockquote>

The Debtor urges the Court to follow the <u>MicroAge</u> analysis and reject the line of cases that holds that § 502(d) does not apply to administrative expenses under § 503(b). But even if the Court is not persuaded that § 502(d) applies to all administrative expenses under § 503(b), the Debtor urges in the alternative that the Court find that § 502(d) nevertheless does apply to § 503(b)(9) administrative expenses. The Debtor correctly points out that most § 503(b) administrative expenses are post-petition obligations. In contrast, § 503(b)(9) expenses are by their very nature pre-petition obligations. The fact that Congress chose to reach back pre-petition and elevate this "special class" of pre-petition obligations does not in the Debtor's view make them post-petition obligations. Therefore, the Debtor argues that even if § 502(d) does not apply to post-petition administrative expenses under § 503(b), it certainly should apply to this "special class" of pre-petition obligations that BAPCPA has now afforded administrative expense priority under § 503(b)(9). According to the Debtor, it is one thing for Congress to expressly take certain pre-petition claims and elevate their status to allow them to be paid as administrative expenses under § 503(b). But it does not follow that by doing so, Congress also intended to *sub silentio* take those same pre-petition claims and insulate them from the requirement of § 502(d) that the claimant must first pay back any preferential transfers to the estate before they can get paid on their pre-petition claims, as administrative

-21-

expenses under § 503(b)(9). To judicially do so now, the Debtor argues, without such express authorization from Congress, goes too far. While Congress may have elevated this "special class" of pre-petition claims to enable them to be paid as administrative expenses, the Debtor disputes the notion that Congress also impliedly intended to change the nature of such pre-petition claims into post-petition claims free of the application of other sections of the Bankruptcy Code to pre-petition claims. In support, the Debtor points to the Brown & Cole court's recognition that even though § 503(b)(9) expenses are now allowed as administrative expenses, they are still inherently pre-petition debts. 375 B.R. at 878-79.

## V. Analysis

The Court rejects the Debtor's contention that § 502(d) applies generally to § 503(b) administrative expenses and also rejects the Debtor's alternative argument that § 502(d) should in any event apply to § 503(b)(9) expenses.

First, the Court agrees with those cases that hold that the allowance of claims under § 502 is entirely separate from the allowance of administrative expenses under § 503. Section 501 governs the filing of a pre-petition claim by a creditor but also provides for the filing of certain types of post-petition claims identified in § 501(d) the same as if such post-petition claims were pre-petition claims against a debtor. Section 502 governs the allowance of claims filed under § 501. Section 502(a) provides that such claims are deemed allowed when filed, without any notice or hearing, unless there is an objection under § 502(b). Section 502(d) provides that notwithstanding subsections (a) and (b) of § 502, the Court shall disallow any claim of an entity from whom property is recoverable under certain avoidance provisions of the Bankruptcy Code. The universe of claims allowed by § 502 includes pre-petition claims and certain specifically described post-petition claims.

-22-

Therefore, § 502(d) does apply to post-petition claims, but *only* to those post-petition claims that are governed by § 501 and § 502. If § 502(d) applied to all post-petition claims, and not just to those post-petition claims governed by § 501 and § 502, it would be wholly unnecessary for § 502(d) to say that it applies "notwithstanding subsections (a) and (b) of § 502." The inclusion of this qualifying phrase, in the Court's view, demonstrates that § 502(d) applies only to those pre-petition claims and post-petition claims that are governed by § 501 and § 502 and does not apply to administrative expenses under § 503. Section 502(d) does not contain any reference to administrative expenses allowed under § 503. There is no reason for it to contain any such reference because § 502 only applies to those pre-petition claims and specifically identified post-petition claims that are filed under § 501 and allowed under § 502.

Second, requests for payment of administrative expenses are expressly filed under § 503(a) and not by a proof of claim filed under § 501.[4] Further, administrative expenses are only allowed after notice and hearing under § 503(b), in contrast to the "deemed allowed" treatment provided by § 502(a) to proofs of claims filed under § 501. Section 503 says nothing about filing administrative expenses as claims under § 501 nor their allowance under § 502. Section 503 provides the sole method for filing a request for payment of an administrative expense and the sole method for allowance of an administrative expense. The provisions governing filing, payment and allowance of administrative expenses are self-contained within § 503 and do not depend upon nor are they limited by the filing and allowance provisions for pre-petition claims and those specifically

---

[4] This distinction is also recognized by Official Form B10 which is used to file a proof of claim. It states on its face: "This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503."

-23-

identified post-petition claims under § 501 and § 502.

If § 502(d) is read in isolation without regard to § 501, the other provisions of § 502, and § 503, there may appear to be support for the Debtor's interpretation. The <u>MicroAge</u> court's analysis in this regard has some appeal. The court focused on the term "claim." 291 B.R. 503, 508 (B.A.P. 9th Cir. 2002). The claimant had argued that "§ 502(d) should be read to exclude requests for payment of expenses of administration." <u>Id.</u> The court rejected that argument, finding "no support in the language of the Bankruptcy Code itself," particularly in view of the broad definition of "claim" in § 101(5)(A). Furthermore, the court noted several Code provisions to the contrary, indicating Congressional intent to include "expense" within the scope of "claim." <u>Id.</u> (listing various Bankruptcy Code sections that use the term "claim" in referring to both claims and expenses). However, it is just as easy to point to other examples where Congress used "claim" and "expense" in a way that suggests that there is a distinction. <u>See</u> <u>Durango Georgia Paper Co.</u>, 297 B.R. 326, 329. More important, the Court must read the words of the statute "'in their context and with a view to their place in the overall statutory scheme . . . [and] must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.'" <u>Greenbaum v. E.P.A.</u>, 370 F.3d 527, 535-36 (6th Cir. 2004) (quoting <u>F.D.A. v. Brown & Williamson Tobacco Corp.</u>, 529 U.S. 120, 132-33 (2000)). In applying this rule of statutory construction, the Court does not conclude that a § 503(b)(9) administrative expense cannot be a "claim." Instead, the Court finds that a § 503(b)(9) administrative expense is simply not a type of claim that is filed under § 501, and allowed or disallowed under § 502. When § 502(d) is examined within the larger framework of the Bankruptcy Code, the better interpretation supports the argument of the § 503(b)(9) Parties.

-24-

Third, to adopt the Debtor's position results in the collision of two mandatory provisions: § 502(d) and § 503(b). "When faced with statutory sections that are inherently inconsistent, [the Court's] first duty is to reconcile the competing provisions so that they can both remain in effect." Schmitt v. City of Detroit, 395 F.3d 327, 330 (6th Cir. 2005) (citations omitted). As the Durango Georgia Paper court correctly pointed out, absent some qualifying clause, one mandatory provision in a statute should not be presumed to trump another mandatory provision. 297 B.R. 326, 331. Yet that is what the Debtor is asking the Court to do. There is no conflict between the mandatory allowance of claims under § 502(a) and (b), and the mandatory disallowance of claims under § 502(d), because of the qualifying preface of § 502(d) that says that § 502(d) applies "notwithstanding subsections (a) and (b) of this section." In contrast, the qualifying clause in § 502(d) does not refer to § 503(b) and there is no other Bankruptcy Code provision that harmonizes the mandatory allowance of an administrative expense under § 503(b) with the mandatory disallowance of a claim under § 502(d). The Debtor's position puts these two mandatory sections on a direct collision course. On the other hand, the position of the § 503(b)(9) Parties avoids this conflict. The mandatory disallowance provision of § 502(d) applies only to those claims governed by the claims allowance process under § 502. The mandatory allowance provision of § 503(b) applies only to administrative expenses and nothing else. In so holding, the Court avoids the conflict between these mandatory provisions that is otherwise unavoidable under the Debtor's position. See Chrysler Corp. v. Commissioner, 436 F.3d 644, 654-55 (6th Cir. 2006) ("[Courts] must construe a statute as a whole and, in so doing, [ ] must strive to interpret provisions so that other provisions in the statute are not rendered inconsistent, superfluous, or meaningless.") (citations omitted).

Fourth, although most of the cases that have considered the application of § 502(d) to

§ 503(b) administrative expenses have done so only where the administrative expense at issue arose as a post-petition obligation, their logic and reasoning are sound and should apply with equal force to this new class of administrative expenses under § 503(b)(9). The mere fact that § 503(b)(9) administrative expenses arise pre-bankruptcy does not change the analysis. While § 503(b)(9) grants administrative expense priority to a pre-petition obligation, this is not the first nor the only time that § 503(b) recognizes a pre-petition obligation as an allowable administrative expense of a bankruptcy case. As noted earlier, §§ 503(b)(3) and (4), both of which existed pre-BAPCPA, each provide for the allowance as an administrative expense of a certain type of pre-bankruptcy obligation for creditors and their professionals who perform pre-petition services in connection with the preparation and filing of an involuntary bankruptcy petition. Much like § 503(b)(9), §§ 503(b)(3) and (4) represent instances where Congress has seen fit to define a certain class of pre-petition obligations, take that defined class of pre-petition obligations and permit the holders of such pre-petition obligations to have their pre-petition claims allowed as administrative expenses under § 503(b), rather than be subjected to the claims filing and allowance provisions of § 501 and § 502. While certainly much larger in scope than § 503(b)(3) or (4), § 503(b)(9) is but another example of Congress defining a specific type of pre-petition obligation that it has determined should be afforded administrative expense priority treatment under § 503(b).

Fifth, the Debtor invariably refers to § 503(b)(9) as simply a "special class" of pre-petition claims and for that reason attempts to distinguish § 503(b)(9) administrative expenses from other § 503(b) administrative expenses. But no such distinction is recognized in the statute. Section 503(b) contains nine categories of administrative expenses, six of which consist of post-petition obligations and three of which consist either entirely or partially of pre-petition obligations. Section

-26-

503 makes no distinction among these nine categories either with respect to how their payment is requested under § 503(a), nor how they are allowed under § 503(b). Further, § 507(a)(2) affords the identical priority to all administrative expenses allowed under § 503(b), without regard to which of § 503(b)'s nine examples provides the basis for the administrative expense. The distinction urged by the Debtor -- i.e., that § 503(b)(9)'s are pre-petition in nature -- although factually true, is not a distinction that makes any difference under § 503(b), or is even recognized by § 503(b). Nor is there any legislative history to suggest that Congress intended there to be such a distinction.

Sixth, if Congress only intended to make § 503(b)(9) a "special class" of pre-petition claims and thereby continue to make them subject to the claims allowance provisions of § 501 and § 502, and the disallowance provision of § 502(d), it could have easily accomplished that by simply creating a separate priority for this special class under § 507 of the Bankruptcy Code instead of their wholesale inclusion in § 507(a)(2) (providing second priority for "administrative expenses allowed under section 503(b) of this title"). Congress could have elevated the rights of this special class under § 507 while still recognizing their inherent nature as pre-petition claims subject to the claims allowance process for pre-petition claims under § 502. This would have also avoided the conflict between the mandatory allowance provision of § 503(b) and the mandatory disallowance provision of § 502(d) that would occur if the Court adopts the Debtor's position. But Congress did not do so. Instead, it took this "special class" of pre-petition claims and determined that they are administrative expenses of the bankruptcy case, payable and allowable under § 503(b) along with all of the other statutorily recognized administrative expenses.[5] By doing so, Congress placed § 503(b)(9)

---

[5] If Congress had determined to instead create a pre-petition priority status for the value of goods received by the debtor within 20 days before its bankruptcy petition, other than § 507(a)(2), such special class of pre-petition claims would undoubtedly have left those claims

administrative expenses beyond the reach of § 502(d).

VI. <u>Conclusion</u>

The Court is persuaded by the line of cases, including <u>Durango Georgia Paper</u>, <u>CM Holdings</u>, <u>Lids Corp.</u>, and <u>Phoenix Restaurant</u>, that holds that § 502(d) does not apply to the allowance and payment of administrative expenses under § 503(b). These cases preserve intact the separateness of the provisions governing allowance and payment of expenses incurred in connection with the administration of a bankruptcy case. The fact that § 503(b)(9) claims happen to be a kind of administrative expense that is comprised of pre-petition obligations does not detract from the analysis of those cases. The Debtor and § 503(b)(9) Parties also articulated competing policy reasons to adopt their respective positions. However, the Court need not resort to consideration of these policies because, in the Court's view, the statute just does not provide for § 502(d) to apply to the allowance of an administrative expense under § 503(b).

The Court will enter separate orders consistent with this opinion.

**For publication**

Signed on September 16, 2008

                                        /s/ Phillip J. Shefferly
                                        Phillip J. Shefferly
                                        United States Bankruptcy Judge

---

subject to the claims allowance process under § 502 and to the disallowance provisions of § 502(d). <u>See</u> <u>In re Eye Contact, Inc.</u>, 97 B.R. 990 (Bankr. W.D. Wisc. 1989) (applying the disallowance provisions of § 502(d) to a pre-petition priority claim under pre-BAPCPA § 507(a)(3)).