UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

Plastech Engineered Products, Inc., et al.[1]

Case No. 08-42417
Chapter 11

Debtors.

Hon. Phillip J. Shefferly

Jointly Administered

_____/

**AMENDED OPINION[2] DENYING IN PART
INTERNATIONAL PRODUCTS WAREHOUSE LLC'S THIRD
AMENDED APPLICATION FOR PAYMENT OF ADMINISTRATIVE
EXPENSE UNDER BANKRUPTCY CODE SECTIONS 503(b) AND 365(d)(3)**

Introduction

On January 23, 2009, International Products Warehouse, LLC ("IPW") filed a third amended

request for payment of an administrative expense under §§ 503(b) and 365(d)(3) of the Bankruptcy

Code (docket entry #4375). IPW's motion was supported by an affidavit of Sam Loeb ("Loeb")

filed on January 23, 2009 together with an amended affidavit of Loeb filed on March 2, 2009. The

original affidavit had numerous attachments to it including a lease entered into between IPW, as

landlord, and NYX Shreveport, LC, as tenant, dated November 28, 2001 and effective July 1, 2002

("Lease"). In addition, the affidavit had attached to it a Consent, Agreement, and Amendment of

Lease ("Amended Lease") dated as of August 27, 2004 between IPW as landlord and the Debtor as

_____

[1]The Debtors are the following entities: Plastech Engineered Products, Inc., LDM
Technologies, Inc., Plastech Frenchtown, Inc., Plastech Decorating Systems, Inc., Plastech
Exterior Systems, Inc., Plastech Romulus, Inc., MBS Polymet, Inc., LDM Holding Canada, Inc.
and LDM Holding Mexico, Inc.

[2]This Amended Opinion is issued to make one correction on page 6 of the original
Opinion (docket entry #4632), which inadvertently said "60" days instead of "120" days with
respect to the statutory time period under § 365(d)(4) for a debtor to assume or reject a non-
residential lease. In all other respects, this Amended Opinion is identical to the original Opinion.

tenant. The original affidavit also had attached to it various photographs, invoices and estimates of costs pertaining to the leased premises at 9630 Interport Drive, Shreveport, Louisiana ("Premises"). The Debtor filed a response to the third amended request, opposing any award of an administrative expense under §§ 503(b) and 365(d)(3). The Court heard IPW's motion and the Debtor's objection to it on March 4, 2009. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B), over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). At the conclusion of the hearing, the Court took the matter under advisement.

Facts

The following facts are not in dispute. From and after August 27, 2004, the Debtor leased the Premises pursuant to the Amended Lease. Prior to that time, IPW had leased the Premises to NYX under the Lease. On February 1, 2008, the Debtor filed this Chapter 11 case. On July 11, 2008, the Debtor filed a motion seeking to reject certain non-residential real property leases including the Amended Lease with IPW, with rejection to be effective July 31, 2008. On August 11, 2008, the Court entered an order granting the Debtor's motion and authorizing the Debtor to reject the Amended Lease with IPW (docket entry #2462), effective July 31, 2008. The Debtor thereafter vacated the Premises. On August 29, 2008, IPW filed its original request for an administrative expense. On October 16, 2008, IPW filed an amended request for an administrative expense. On January 23, 2009, IPW filed the third amended request, which is the motion now pending before the Court.

IPW's motion seeks the allowance and payment of an administrative expense under either § 503(b) or § 365(d)(3) of the Bankruptcy Code in the amount of $124,772.56 plus an unspecified amount of attorney fees. At the hearing, IPW modified its request in three respects. First, IPW

abandoned its request for allowance and payment of an administrative expense under § 503(b). IPW now relies solely upon § 365(d)(3). Second, IPW reduced the amount of its request from $124,772.56 to $107,863.35 based upon Loeb's amended affidavit, which eliminated some invoices that had erroneously been included in the calculation of IPW's claim. Third, although IPW's motion also asks for an unspecified amount of attorney fees, IPW determined not to proceed with that request at this time. The Court's decision today deals only with IPW's request for allowance and payment of $107,863.35 under § 365(d)(3) and the Court will address any request for attorney fees filed by IPW at a later time.

IPW's motion breaks down its request for allowance and payment of an administrative expense into three categories. The first category consists of labor and repair costs regarding railroad tracks located outside of the building at the Premises. IPW estimates these costs at $63,180. According to Loeb's original affidavit, the repair costs for the railroad tracks are necessary because of damage done to the tracks by NYX, the predecessor tenant. All of the damages in this category occurred pre-petition. The second category in IPW's motion relates to the Debtor's alleged failure to repair and maintain the Premises during the period of time post-petition but pre-rejection of the Amended Lease. This category of damages aggregates $21,688.99 and is based entirely on events occurring post-petition but pre-rejection. The third category totals $22,994.36 and consists of labor and other costs incurred in removing personal property, scrap and waste from the Premises after the Debtor surrendered the Premises.

## Discussion

Section 365(d)(3) of the Bankruptcy Code states in pertinent part: "The trustee shall timely perform all of the obligations of the debtor . . . arising from and after the order for relief under any

unexpired lease of nonresidential real property, until such lease is assumed or rejected, not-withstanding § 503(b)(1) of this title." 11 U.S.C. § 365(d)(3).

The date of the order for relief in this case is February 1, 2008. The date of rejection is July 31, 2008. Under § 365(d)(3), the Debtor was required to timely perform all of the obligations under the Amended Lease arising from and after February 1, 2008 until July 31, 2008. There is no dispute regarding the payment of rent arising during this period of time. Rather, the dispute centers on other obligations set forth in the Amended Lease and the Debtor's alleged failure to comply with those other obligations. IPW's motion relies on three sections of the Amended Lease and asserts that the Debtor failed under § 365(d)(3) to perform its obligations under those sections.

The first section on which IPW relies is Section 5.1, entitled "Maintenance." That section of the Amended Lease provides that "[a]t all times during the term of this Lease, Tenant shall, at its cost and expense, maintain the Demised Premises and all improvements situated thereon . . . in good repair and order, reasonable wear and tear excepted . . . ." (Docket entry # 4375, Part 40 at p.9.)

Section 5.2 of the Amended Lease is entitled "Surrender of Demised Premises at expiration or termination of Lease." That section provides that "the Demised Premises shall be surrendered to Landlord at the expiration or termination of this Lease in as good condition as they were on the Commencement Date, except for reasonable wear and tear." (Id.)

Section 15.5 of the Amended Lease is entitled "Cure of other party's default." It provides that:

> If Tenant breaches any provision of this Lease or otherwise fails in the full and prompt performance of any obligation arising hereunder, and such breach or failure remains uncured beyond the expiration of any applicable cure period provided in Section 15.1, Landlord may, but shall not be obligated to, take such action as may be required to perform such obligation and in connection therewith may expend such sums on Tenant's behalf as Landlord deems appropriate. In the event that Landlord

-4-

does so, . . . the costs and expenses Landlord incurs in connection therewith, together with all costs, expenses and attorney fees incurred by Landlord in connection therewith, shall constitute a demand obligation of Tenant . . . .

(Id. at p.19.)

The Court will apply § 365(d)(3) to these three Amended Lease provisions and to each of the three categories of IPW's motion. First, the Court holds that the first category of IPW's motion, consisting of $63,180 for the cost to repair damage to the railroad tracks, must be denied because the obligation to repair the damage was not an "obligation . . . arising from and after the order for relief" and, therefore, is not within § 365(d)(3).

"Arising" is not defined in the Bankruptcy Code. "Where a statute does not define a term, it receives its common meaning." United States v. Moses, 137 F.3d 894, 899 (6th Cir. 1998) (citation omitted) (using the American Heritage Dictionary of the English Language to define "expert" and "trauma"). "Generally, a court should give a word in a statute its ordinary, contemporary, common meaning, absent an indication Congress intended [it] to bear some different import." National Cotton Council of America v. E.P.A., 553 F.3d 927, 936 (6th Cir. 2009) (internal quotation marks and citation omitted) (resorting to the New Oxford American Dictionary, Black's Law Dictionary and the American Heritage Dictionary in defining "waste"). "Arise" is defined as "to originate," Black's Law Dictionary 102 (7th ed. 1999), or "to originate from a source [or] come into being," Merriam-Webster's Collegiate Dictionary 62 (10th ed. 1993).

IPW admits that all of the damages to the railroad tracks occurred pre-petition and that they were caused by NYX before the Debtor even took possession of the Premises. Section 5.1 of the Amended Lease imposed an obligation to "maintain" the Premises "in good repair." Causing and then failing to repair damage to the railroad tracks may have violated Section 5.1. But the obligation

-5-

to prevent and then to repair that damage "arose" before the order for relief, not after. The Court rejects the argument advanced by IPW that a continuing or new obligation to repair the railroad tracks "arose" each and every day that the Debtor failed to repair the pre-petition damage. Even if there was a continuing obligation to repair, it was not an obligation that "arose" after the Debtor filed its bankruptcy petition and, therefore, it is just not within the obligations of § 365(d)(3). The pre-petition breach of the obligation to repair may have remained uncured post-petition, but it "arose" pre-petition, not after the order for relief. Further, to accept IPW's argument and require the Debtor to cure a pre-petition breach of an unexpired lease under § 365(d)(3), even though the Debtor had not yet determined whether to assume or reject the Amended Lease, would eviscerate the Debtor's statutory right to take 120 days to determine whether to assume or reject a lease post-petition. A pre-petition breach must be cured in order to assume an unexpired lease under § 365(b)(1). However, the obligation to repair pre-petition damage is not an obligation that "arises" post-petition and, therefore, it is not an obligation that a debtor must timely perform under § 365(d)(3) during the post-petition, pre-rejection period.

Second, the Court holds that IPW is entitled to an administrative expense claim under § 365(d)(3) to the extent that it can demonstrate that, after the Debtor filed its petition and before it rejected the Amended Lease, the Debtor failed to maintain the Premises in good condition and repair as required by Section 5.1 of the Amended Lease. If the Debtor's conduct that constitutes the failure to "maintain . . . in good repair" originated, or first occurred, post-petition, then the obligation that the Debtor failed to timely perform must necessarily have "arisen" after the order for relief and, therefore, is within § 365(d)(3).

Both IPW and the Debtor cite Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig

Sporting Goods, Inc.), 203 F.3d 986 (6th Cir. 2000) as the controlling authority in the Sixth Circuit regarding *when* an obligation to pay rent "arises" under an unexpired lease. Koenig applies a billing date approach to monthly payments of rent under an unexpired lease rather than a pro-ration approach, but it does not address the issue of when other obligations may arise under an unexpired lease, such as the obligation to maintain leased premises in good condition and repair. See In re Phar-Mor, Inc., 290 B.R. 319, 326-28 (Bankr. N.D. Ohio 2003) (addressing real estate taxes); In re Roberds, Inc., 270 B.R. 702 (Bankr. S.D. Ohio 2001) (finding Koenig does not apply to a claim for post-rejection occupancy charges); In re Travel 2000, Inc., 264 B.R. 444, 448 (Bankr. W.D. Mich. 2001) (finding that Koenig "narrowly addressed the application of 11 U.S.C. § 365(d)(3) to the specific facts presented in that case, those being that the lease payment came due during the post-petition, pre-rejection time period"); In re Oscar Hornsby, Inc., No. 00-61313, 2001 WL 34083517 (Bankr. E.D. Ky. Jan. 26, 2001) (noting Koenig "was rendered in the context of a month-to-month, payment-in-advance lease" and thus was not applicable to a claim for real estate taxes). Koenig is distinguishable on its facts as it dealt only with rent payable in advance under a month-to-month lease. It does not require a billing date approach to every obligation under an unexpired lease. Therefore, Koenig does not control the outcome of the dispute in this case.

The purpose of § 365(d)(3) is to provide a landlord with full and timely compliance under an unexpired lease during the time that a debtor takes to determine whether to assume or reject such lease. A debtor is not permitted to occupy premises under an unexpired lease during the post-petition period prior to assumption or rejection without fully and timely performing all of the obligations that "arise" during that time frame with respect to such premises. If IPW can demonstrate factually that there was a breach of Section 5.1 of the Amended Lease (and not just not

a failure to cure a pre-petition breach), that first occurred post-petition and pre-rejection, then IPW is entitled to an administrative expense claim on account of that breach under § 365(d)(3), even though the Amended Lease does not specify a "billing date" regarding the breached obligation in the same way that it does for the payment of rent. The Debtor disputes IPW's allegations of fact during the post-petition, pre-rejection period, and, therefore, the Court will conduct an evidentiary hearing to determine those facts.

Finally, the Court denies IPW's request for an administrative expense claim for $22,994.36 for labor and other costs incurred in removing personal property, scrap and waste from the Premises. The failure to remove this material may violate Section 5.2 of the Amended Lease, which requires the Debtor to surrender the Premises to IPW at the expiration or termination of the Amended Lease in as good condition as they were on the commencement date. However, that is not an obligation that "arises" until surrender of the Premises. Surrender of the Premises occurs only after rejection. Rejection in this case occurred on July 31, 2008. Any breach of this covenant only occurred post-rejection. As such, it does not give rise to an administrative expense claim under § 365(d)(3), but instead gives rise to a general unsecured claim under § 365(g).

There are two other points that are worth noting. First, the parties each cited to opinions from outside the Sixth Circuit that the parties found to be persuasive. The Court considered but does not rely upon those opinions in reaching its decision and, therefore, does not believe it is necessary to discuss them. The second point to address concerns Section 15.5 of the Amended Lease which was also cited by IPW in support of its motion. That section of the Amended Lease provides a mechanism for IPW to itself take action to cure those breaches of the Amended Lease that remain uncured by the Debtor, and for the Debtor to reimburse IPW for its costs and expenses. The Court

-8-

does not consider this provision to be of any relevance in ascertaining which of the Debtor's obligations under the Amended Lease fall within § 365(d)(3) because IPW does not allege that it took any action to cure any breach by the Debtor. However, this provision may be relevant to IPW's request for attorney fees and, therefore, the Court will allow the parties to address its significance if and when IPW further prosecutes its request for attorney fees.

In sum, out of the total administrative expense claim sought by IPW under § 365(d)(3) in the amount of $107,863.35, the Court hereby disallows as an administrative expense claim the sum of $86,174.36, and will schedule an evidentiary hearing with respect to the remainder of IPW's request for an administrative expense claim consisting of $21,688.99. In addition, the Court will consider at the time of such evidentiary hearing IPW's claim for attorney fees that was set forth in its motion but, at the request of IPW, not addressed at the March 4, 2009 hearing. The Court will confer with the Debtor and IPW at the next omnibus hearing in the Chapter 11 case on April 10, 2009, regarding the scheduling of the evidentiary hearing and regarding any request by IPW for attorney fees.

**Signed on March 20, 2009**

> **/s/ Phillip J. Shefferly**
> **Phillip J. Shefferly**
> **United States Bankruptcy Judge**